UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NICHOLAS L. VASSENELLI,

                           Plaintiff,

    -v-                                              5:10-CV-1422

THE CITY OF SYRACUSE; STEPHANIE A.
MINER, in her individual and official capacity as
Mayor of the City of Syracuse; FRANK L.
FOWLER, in his individual and official capacity
as Chief of Police for the City of Syracuse;
JUDY CULETON, in her individual and official
capacity as Director of the Human Resources
Division of the Syracuse Police Department;
MATTHEW DRISCOLL, in his individual capacity
as former Mayor of the City of Syracuse; GARY
MIGUEL, in his individual capacity as former
Chief of Police for the City of Syracuse;
SERGEANT RICHARD PERRIN, in his individual
and official capacity; POMCO GROUP, individually
and as an agent for The City of Syracuse, a/k/a
POMCO, Inc.; SHARON MILLER, in her individual
and official capacity and as agent of the City of
Syracuse; SHARON ERIKSSON, in her individual
and official capacity and as agent of the City of
Syracuse; and DAVID BARRETTE, in his
individual and official capacity,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

BOSMAN LAW OFFICE, LLC                A.J. BOSMAN, ESQ.
Attorneys for Plaintiff
6599 Martin Street
Rome, NY  13440

CITY OF SYRACUSE LAW DEPARTMENT                 SHANNON T. O'CONNOR, ESQ.
Attorneys for Defendants City of Syracuse,      Ass't Corporation Counsel
    Miner, Fowler, Culeton, Driscoll, and
    Miguel
233 E. Washington Street
300 City Hall
Syracuse, NY  13202

COUGHLIN & GERHART LLP                          MARY LOUISE CONROW, ESQ.
Attorneys for Defendants City of Syracuse,
    Miner, Fowler, Culeton, Driscoll, Miguel,
    Perrin, and Barrette
19 Chenango Street
P.O. Box 2039
Binghamton, NY  13902

HISCOCK & BARCLAY LLP                           ROBERT A. BARRER, ESQ.
Attorneys for Defendants POMCO Group
    and Miller
One Park Place
300 South State Street
Syracuse, NY  13202

LAW OFFICES OF BRADY & CARAFA                   JAMES C. BRADY, ESQ.
Attorneys for Defendant Eriksson
443 Electronics Parkway
Liverpool, NY  13088


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On November 24, 2010, plaintiff Nicholas Vassenelli ("plaintiff" or "Vassenelli"), a

disabled and retired Syracuse police officer, commenced this action against the City of

Syracuse ("the City"); Stephanie Miner, Mayor of the City ("Mayor Miner"); Frank Fowler,

Chief of Police for the City ("Chief Fowler"); Captain Judy Culeton, Director of Human

Resources for the Syracuse Police Department ("Capt. Culeton"); Matthew Driscoll, former

Mayor of the City ("Mayor Driscoll"); Gary Miguel, former Chief of Police for the City ("Chief Miguel"); Sgt. Richard Perrin ("Sgt. Perrin"); the POMCO Group ("POMCO"); Sharon Miller, Director of Case Management at POMCO ("Miller"); Sharon Eriksson ("Eriksson"); and First Deputy Chief David Barrette ("Deputy Chief Barrette").  This action arises from a policy change made by the City in 2009 that allegedly impacted plaintiff's access to continued medical care and benefits guaranteed under New York state law.

In his amended complaint, filed on September 29, 2011, plaintiff brings a total of fourteen causes of action for alleged violations of federal and state law.  ECF No. 45.  These claims include two procedural due process claims (First and Second Causes of Action); a substantive due process claim (Third Cause of Action); an alleged violation of the Ninth Amendment to the United States Constitution (Fourth Cause of Action); an alleged violation of the New York state constitution (Fifth Cause of Action); a claim invoking the doctrine of equitable estoppel (Sixth Cause of Action); breach of contract (Seventh Cause of Action); negligence (Eighth Cause of Action); a § 1983 conspiracy claim (Ninth Cause of Action); a federal equal protection claim (Tenth Cause of Action); another negligence claim (Eleventh Cause of Action); a gross negligence claim (Twelfth Cause of Action); alleged retaliation in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act (Thirteenth Cause of Action); and alleged retaliation in violation of the First Amendment to the United States Constitution (Fourteenth Cause of Action).[1]

On January 30, 2012, after a three-day evidentiary hearing, the Hon. David E. Peebles, United States Magistrate Judge, issued a Report–Recommendation advising that

---

[1]  All federal claims but the ADA and Rehabilitation Act cause of action are brought pursuant to 42 U.S.C. § 1983.  Plaintiff does not specify against which defendants each cause of action is asserted.

Vassenelli's motion for a preliminary injunction be denied.  Vassenelli v. City of Syracuse, 2012 WL 716187 (N.D.N.Y. Jan. 30, 2012).  This Report–Recommendation was adopted in its entirety over plaintiff's objections.  Vassenelli v. City of Syracuse, 2012 WL 715183 (N.D.N.Y. Mar. 5, 2012).

The parties have completed extensive discovery.  On February 27, 2013, Eriksson filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  ECF No. 164.  POMCO and Miller, and the Syracuse defendants[2] each filed similar motions the following day.  ECF Nos. 165, 166.  Beginning on March 29, 2013, plaintiff filed late responses to the motions.  ECF Nos. 184–187, 191–216.  Defendants have replied.  ECF Nos. 222, 224, 226.  The motions were considered on submit without oral argument.[3]

## II.  FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.  Mayor Driscoll was the mayor of the City from July 2001 through December 31, 2009.  In 2005, he appointed Chief Miguel to head the Syracuse Police Department.  Mayor Miner took office on January 1, 2010, at which time she appointed Chief Fowler to replace Chief Miguel.  The mayor oversees all City departments, including the police department.  The chief of police supervises the officers within the department and is responsible for the implementation of department policies.  Deputy Chief Barrette also assumed his current position in January 2010.  In this role, he oversees Capt. Culeton, who supervised the Human Resources

---

[2]  The Syracuse defendants include the City, Mayor Miner, Chief Fowler, Capt. Culeton, Mayor Driscoll, Chief Miguel, Sgt. Perrin, and Deputy Chief Barrette.

[3]  Just as in the related case of Mullen v. City of Syracuse, No. 5:10-CV-1110, the motions were originally scheduled for oral argument on April 12, 2013.  However, plaintiff's counsel's failure to file responsive papers in a timely fashion, despite being granted an extension of time, prompted an extension of time for defendants' reply and resulted in the motions being considered on submit without oral argument.

Division at the police department from 2005 through September 2012.

Vassenelli was injured in October 2003 during the performance of his duties as an officer for the Syracuse Police Department.  As a result of his injuries, he is partially-paralyzed, permanently disabled, and requires ongoing medical care including around-the-clock home healthcare assistance.[4]  Plaintiff accepted a disability retirement in 2006.

The City does not participate in the state workers' compensation program and is instead self-insured.  New York General Municipal Law section 207-c requires a municipality to pay all medical expenses for police officers who have been injured on the job, even after they retire.  The City is thus obligated to pay for Vassenelli's medical care necessitated by his work-related injuries.[5]  Payment for his medical expenses are—at least initially—processed internally by the Medical Section of the police department's Human Resources Division, primarily by Sgt. Perrin under the supervision of Capt. Culeton.  Sgt. Perrin replaced Sgt. Susan Adams ("Sgt. Adams") after she retired.

When the Medical Section receives a bill for medical services that are clearly related to an on-the-job injury, that bill is immediately approved for payment.  If, however, a service is not clearly necessary and/or related to an injury sustained by an officer during the course of his or her duties, then an independent medical examination ("IME") may be requested to make such a determination before the payment is approved.

In April 2008 the City entered into a three-year consulting agreement with POMCO—a

---

[4]  For a more detailed explanation of plaintiff's injuries as well as the associated medical treatment, home renovations, and transportation services provided at the City's expense, see the Report–Recommendation of Judge Peebles.  Vassenelli, 2012 WL 716187, at *1–5.

[5]  Plaintiff also has secondary health insurance through the City for unrelated medical expenses, and he receives monthly Social Security Disability payments.

private New York corporation and third-party benefits administrator.[6]  Plaintiff alleges that in 2009 the City, at POMCO's urging, enacted a new policy through which payments for section 207-c medical expenses were reduced to mirror the rates of the state workers' compensation program.[7]  Plaintiff was not provided with notice or an opportunity to challenge the policy change prior to its implementation.

Eriksson, a licensed nurse and self-employed healthcare case manager, served as Vassenelli's nurse case manager from August 2009 to May 2010.  In 2010 the City retained POMCO to oversee the payment of section 207-c medical benefits.  POMCO continues to utilize the workers' compensation fee schedule or negotiated rates to pay service providers.  Plaintiff alleges that POMCO refuses to negotiate and only pays the workers' compensation rate.  Miller was assigned as plaintiff's nurse case manager in October 2010 but has since been replaced.

Vassenelli claims that the 2009 policy change has caused a reduction in his access to medical treatment, prompted some providers to discontinue care, and resulted in the replacement of his self-selected around-the-clock home healthcare aides with inadequately trained part-time providers.  Vassenelli further alleges that the City has refused to pay for specific home renovations and transportation services, and threatened to place him in an assisted-living facility against his will.[8]

_____

[6]  This agreement was subsequently extended to March 31, 2013.

[7]  Defendants maintain that the City utilized the workers' compensation fee schedule well before POMCO became involved with the City.

[8]  The allegation that defendants intended to forcibly remove Vassenelli from his home and place him in an assisted-living facility was the subject of the preliminary injunction hearing before Judge Peebles.  This allegation was found to be without merit.  The evidence instead showed that Miller merely broached the topic of temporarily placing plaintiff in such a facility due to an abrupt termination of his home healthcare services.

(continued...)

Defendants acknowledge that they have required plaintiff to undergo periodic IMEs to ensure that the services for which the City pays are medically necessary and arose from his work-related injuries.  They contend that one such IME revealed that plaintiff's massage and aqua therapy was not medically necessary.  As a result, these services were discontinued.  However, after speaking with Vassenelli, Sgt. Perrin reinstated the aqua therapy.

Defendants assert that plaintiff's preferred home health aides were replaced only after Capt. Culeton discovered they were not properly licensed and brought same to the attention of Chief Miguel.  Defendants initially refused to pay for plaintiff to receive elbow surgery after he failed to cooperate with an IME to determine whether such surgery was related to his disabling injuries.  They also denied payment for a motorized wheelchair after such was deemed not medically necessary by plaintiff's doctor.

Finally, Vassenelli claims that POMCO profits from denied care, but POMCO asserts that it merely receives twenty-five percent (25%) of any savings realized from negotiating a lesser rate with a provider.

## III.  DISCUSSION

Defendants seek summary judgment on all causes of action for various reasons detailed below.[9]

---

[8](...continued)
When Vassenelli objected to the placement, defendants did not pursue it any further and arranged for interim home healthcare instead.  See Vassenelli, 2012 WL 716187, at *8.

[9]  As an initial matter, defendants make the blanket assertion that they are entitled to summary judgment on all claims because there is no evidence that any policy change actually occurred in 2009.  This is without merit.  Vassenelli has identified changes in the payment amounts made to specific providers.  Moreover, a September 23, 2009, letter sent from Sgt. Adams to James Mullen—plaintiff in the related Mullen case—specifically notes:  "Our system of paying job related injures [sic] for all police officers retired and present has changed.  The Department is now lining up with the requirement with the State Of New York Workers' Compensation Medical Fee Schedule."  Bosman Affirmation, Ex. 37, ECF No. 213-1.

## A. <u>Motion for Summary Judgment—Legal Standard</u>

Eriksson, POMCO and Miller, and the Syracuse defendants have each moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986).  A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510; <u>see also</u> <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 553 (2d Cir. 2005).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim.  <u>Id</u>. at 250 n.4, 106 S. Ct. at 2511 n.4.  The failure to meet this burden warrants denial of the motion.  <u>Id</u>.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  <u>Id</u>. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. <u>Jeffreys</u>, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."

Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also

Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when

"there can be but one reasonable conclusion as to the verdict").

### B.  State Action of Eriksson, POMCO, and Miller

Plaintiff makes two general allegations against POMCO and Miller:  (1) that they profit

from the denial of medical benefits and payments to plaintiff's providers[10]; and (2) that they

have a role in deciding whether and what kind of medical care plaintiff receives.  POMCO

and Miller deny both allegations and argue that they are not state actors for purposes of the

§ 1983 claims.  In her separate motion for summary judgment, Eriksson also argues that she

is not a state actor.

A plaintiff asserting claims pursuant to § 1983 for alleged violations of rights

guaranteed by the United States Constitution must show state action.  Fabrikant v. French,

691 F.3d 193, 206 (2d Cir. 2012).  This requires both an alleged constitutional deprivation

caused by acts taken pursuant to state law and a showing that "the party charged with the

deprivation [is] a person who may fairly be said to be a state actor."  Id. (internal quotation

marks omitted).  Even ostensibly private conduct "may become so entwined with

governmental policies or so impregnated with a governmental character that it can be

regarded as governmental action."  Id. (internal quotation marks omitted).  This is so when

there is "such a close nexus between the state and the challenged action that the state is

responsible for the specific conduct of which the plaintiff complains."  Id. at 207 (internal

---

[10]  Judge Peebles found this allegation to be without merit.  See Vassenelli, 2012 WL 716187, at *3. The evidence instead showed that when POMCO negotiates a lesser rate with a provider than the workers' compensation rate, it earns a percentage of the savings.  Neither POMCO nor Miller recovers a percentage of payments that are denied.

quotation marks and alteration omitted).  The fundamental inquiry is whether the private

party's conduct is "fairly attributable to the state."  Id.

POMCO and Miller rely on American Manufacturers Mutual Insurance Co. v. Sullivan,

526 U.S. 40, 119 S. Ct. 977 (1999), to support their argument that a private insurance

company providing workers' compensation pursuant to state law is not a state actor.  In

Sullivan, the private insurer—not the state—made the ultimate decision to withhold payment

for disputed medical treatment.  Id. at 51–52, 119 S. Ct. at 986.  The Court held that the

decision of a private insurer is not fairly attributable to the state to establish state action for

§ 1983 purposes.  Id. at 52, 119 S. Ct. at 986 (noting that the state neither compelled nor

was directly involved in the decision to challenge a medical expense).

Here, however, POMCO, Miller, and Eriksson assert that the decision to challenge a

medical expense, request an IME, or to grant or deny specific medical benefits ultimately

resides with the City.  In fact, POMCO maintains that it was the City's decision to utilize

workers' compensation rates for section 207-c payments and asserts that its role "is limited to

auditing medical bills and processing payments" authorized by the City.  POMCO's Mem. of

Law, ECF No. 165-5, 13.[11]  In his January 2012 Report–Recommendation, Judge Peebles

noted that POMCO's case managers make recommendations to the City regarding medical

payments, but POMCO does not have final authority over which medical services are

approved for payment.  Vassenelli, 2012 WL 716187, at *2–3.

The now more fully developed record supports this conclusion.  During their respective

depositions, Sgt. Perrin and Deputy Chief Barrette testified about how section 207-c

---

[11]  The pagination corresponds to the page numbers as assigned on CM/ECF.  This convention will be used throughout the order for citations to the docket and exhibits.

payments are processed.  They reported that when a bill for medical care is received by the police department, the Medical Section must make a determination whether the medical care is causally related to an injury suffered on the job.  If the injury is clearly related, the bill is paid immediately.  If there is a question about causality, the matter may be reviewed by supervisors and/or referred to a doctor for an IME.  During her deposition, Capt. Culeton advised that she typically made the determination as to whether an injured officer was referred for an IME.

According to these Syracuse Police Department employees, all of whom have participated directly in the processing of section 207-c payments during their careers, the City ultimately determines whether the medical care is necessitated by an on-the-job injury.  As stated by Sgt. Perrin, "after the bills are authorized, then they're sent over to POMCO" for payment.  Perrin Dep. Tr., Conrow Decl., Ex. G, ECF No. 166-9, 21:20–21.  POMCO then processes the payment utilizing the workers' compensation fee schedule or a negotiated rate.

Miller and Eriksson have also played a role in this process with the City.  Specifically, Miller "provide[s] information to the City and suggest[s] alternatives in order to permit the City to make the ultimate decision about what types and levels of medical care is necessary and appropriate."  Miller Decl., ECF No. 165-3, ¶ 6.  Similarly, Eriksson reports that during her tenure as plaintiff's nurse case manager she made recommendations to the City, which made the ultimate decision whether "to commence, continue, or discontinue" services.  Eriksson Decl., ECF No. 164-1, ¶ 11.  She further noted:  "At all times, while so utilizing my nursing skills to coordinate medical treatment of Mr. Vassenelli, I did so at the direction of the City of Syracuse."  Id. ¶ 4.

In short, there is sufficient evidence in the record to establish that POMCO's payment of section 207-c benefits and Miller's and Eriksson's involvement in same is so entwined with the City's processing of the claims that their conduct is fairly attributable to the state, making them state actors for purposes of § 1983.  Accordingly, their motions for summary judgment will be denied insofar as they assert a lack of state action.

## C.  Procedural Due Process Claim—(First and Second Causes of Action)

Defendants argue that they are entitled to summary judgment on the procedural due process claim because Vassenelli does not have a cognizable property interest in all requested medical treatment, appropriate post-deprivation relief was available through an Article 78 proceeding, and plaintiff has not actually been deprived of any medical care guaranteed by section 207-c.

### 1.  Property Interest

Defendants' attempt to frame the property interest at issue mischaracterizes plaintiff's claim.  He specifically alleges that the policy change interrupted his access to ongoing care that had already been deemed medically necessary and related to his on-the-job injuries. See Pl.'s Mem. of Law, ECF No. 213-3, 9–10 ("Plaintiff in the instant matter complains of the termination of medical treatment which had already been deemed related and necessary by Defendants.").[12]

A municipality "shall be liable for all medical treatment and hospital care necessitated

---

[12]  However, only two pages later, plaintiff seeks to broaden the property interest to include the full payment his providers charge for care, regardless of the impact on his access to treatment.  See id. at 11 ("Whether Plaintiff continues to receive treatment is irrelevant because his property interest lies in the payment of medical treatment and care, not the treatment and care itself.").  This argument is unpersuasive. As detailed below, the property interest that arises from section 207-c is the access to medical care related to on-the-job injuries.  The City, and/or POMCO as the benefits administrator, may attempt to reduce the payments in the interest of fiscal economy so long as plaintiff's access to medical care is not terminated.

by reason of [job-related] injury or illness."  N.Y. Gen. Mun. Law § 207-c(1).  It follows that an employee does not have a property interest in section 207-c medical benefits until the treatment is deemed medically necessary and related to his on-the-job injury.  See Sullivan, 526 U.S. at 60–61, 119 S. Ct. at 990 (involving a Pennsylvania state law with similar language).  Once this threshold is established, the benefits cannot be taken away without appropriate due process.  Id. at 59, 119 S. Ct. at 989.

It is undisputed that Vassenelli qualified for and was already receiving section 207-c benefits when the policy change took place in 2009.  These benefits are clearly created by state law and constitute a protected property interest.  See Russell v. Dunston, 896 F.2d 664, 668–69 (2d Cir. 1990) ("The entitlement to disability retirement is a constitutionally protected property interest."); DeMasi v. Benefico, 567 F. Supp. 2d 449, 454 (S.D.N.Y. 2008) ("it is well established under New York law" that a person receiving benefits per section 207-c enjoys a property interest).

Therefore, to the extent Vassenelli claims the alleged policy change deprived him of access to care that had already been deemed medically necessary and related to his on-the-job injuries, such implicates a protected property interest.  However, defendants are correct that they may withhold payment for new treatment pending an IME to determine whether the treatment is medically necessary and related to plaintiff's on-the-job injuries.  In re DePoalo v. Cnty. of Schenectady, 85 N.Y.2d 527, 531 (1995) ("General Municipal Law § 207-c authorizes a municipality to direct an applicant to undergo a medical examination to provide information upon which the municipality may make a determination that an injury or illness

- 13 -

occurred in the performance of duty prior to the awarding of benefits.").[13]

### 2. **Post-Deprivation Relief**

Defendants next argue that the availability of a post-deprivation Article 78 proceeding satisfies due process requirements.[14]

An adequate post-deprivation remedy only constitutes sufficient due process where the deprivation was unpredictable, a pre-deprivation process was impossible, and the officials' conduct was truly "unauthorized." Zinermon v. Burch, 494 U.S. 113, 136–38, 110 S. Ct. 975, 989–90 (1990); see also Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996) (a meaningful post-deprivation remedy satisfies due process where the deprivation was caused by random, unauthorized acts of state employees but not where the deprivation resulted from established state procedures). "In situations where a government actor is acting pursuant to established state regulation, and therefore the act is a foreseeable result, some minimal pre-termination proceeding is required." DeMasi, 567 F. Supp. 2d at 455; see also Russell, 896 F.2d at 668–69 (rejecting defendants' assertion that an Article 78 proceeding provides an adequate post-deprivation remedy).

The policy change was not random or unauthorized.  It was foreseeable that reducing the rate of payment for medical expenses of retired, disabled employees may cut off access to ongoing medical care.  Defendants do not argue that there was a need for prompt action

---

[13]  The parties seem to agree that such a distinction exists.  They dispute, however, whether the City may require plaintiff to submit to periodic IMEs to ensure that ongoing care, which has been deemed necessary and related to his disabling injuries, remains necessary and so related.  The wording of section 207-c and its legislative intent counsels in favor of permitting periodic IMEs.  See id. at 533 (discussing legislative history and concluding that section 207-c "should be construed to protect municipalities from fraudulent or unworthy claims").  Moreover, common sense dictates that an IME would be a standard part of any due process afforded prior to terminating ongoing section 207-c benefits.

[14]  Defendants made this same argument at the motion to dismiss stage in the related Mullen case. See Mullen v. City of Syracuse, 2011 WL 111872, at *2–3 (N.D.N.Y. Jan. 13, 2011).

or that pre-deprivation process was impossible.  Therefore, a post-deprivation Article 78

proceeding is insufficient due process.  See O'Neill v. Johnson, No. 94–CV–1210, 1996 WL

650675, at *9 (N.D.N.Y. Nov. 5, 1996) (McAvoy, C.J.) (plaintiff, who established that he

qualified for section 207–c benefits, "was entitled to a meaningful hearing prior to the

termination/suspension of those benefits").

In sum, Vassenelli does not have a property interest in medical services until such

services have been deemed necessary and related to his disabling injuries.  Once that

determination has been made, the access to such services may not be cut off without

appropriate pre-termination due process.  Any complaints he has regarding the City's initial

determination that a service is not medically necessary or related to his injuries should be

resolved in an Article 78 proceeding, not through a federal procedural due process claim.

### 3. Actual Deprivation

Finally, defendants argue that despite the change in policy, Vassenelli has not been

deprived of access to any medical care necessitated by his disabling injuries.  Plaintiff claims

that some of his treatment has been interrupted or denied as a result of the 2009 policy

change.  He specifically alleges that defendants terminated his access to massage and aqua

therapy, replaced his chosen home healthcare aides, caused gaps in home healthcare

services, and generally delayed or denied payment for certain medical procedures and

equipment.[15]

After conducting a three-day hearing in December 2011 regarding plaintiff's motion for

---

[15]  It is undisputed that Vassenelli remains disabled and qualifies for section 207-c benefits, a
determination that has not been disturbed.  The dispositive issue is instead whether the reduction in the
amount paid to his medical providers has effectively cut off his access to the medical benefits guaranteed by
section 207-c.

a preliminary injunction, Judge Peebles determined that "plaintiff offered no evidence that any medical provider has refused to treat him as a result of the City's payment in accordance with workers' compensation rates." Vassenelli, 2012 WL 716187, at *10.  Judge Peebles further concluded:  "The only evidence adduced even remotely suggesting of lack of payment of any medically necessary expense concerns plaintiff's allegation that he was not reimbursed for $45.00 in medical expenses advanced by him." Id. at *3 n.7 (noting that Vassenelli could not recall what he paid this fee for).  Discovery has again confirmed these preliminary conclusions.

The vast majority of Vassenelli's allegations are simply complaints about the care he is receiving, the competency of his case managers and aides, the replacement of certain preferred providers, and gaps in his home healthcare services.  While these allegations may be pertinent to some of the pendent state claims, they do not support a federal procedural due process claim.  Indeed, none of the services about which he complains have been terminated as a result of defendants' payment policy.

Vassenelli acknowledges that his massage and aqua therapies were discontinued in 2009 after an IME determined such treatment was no longer necessary—not because of the amount his providers were paid.  His assertion that the City has violated his due process rights by requiring him to undergo periodic IMEs and terminating therapy that is no longer necessary is unpersuasive.  As noted above, the wording of section 207-c and its legislative intent counsels in favor of permitting periodic IMEs to ensure medical services for which the City pays are necessary.  The City similarly denied his request for a motorized wheelchair because it was not medically necessary.  At the preliminary injunction hearing his physician, Dr. Christenson, testified that he prescribed the wheelchair at plaintiff's request and

confirmed it was not necessary. Id. at *8.

Moreover, the aqua therapy was discontinued after Vassenelli was admittedly involved in "an argument in the pool one day." Pl.'s Dep. Tr., ECF No. 191, 50:9–10. At his deposition plaintiff acknowledged that the staff at the pool facility advised that he "shouldn't be there anymore" due to safety concerns related to his deteriorating health. Id. 51:8–9. He specifically noted that the aqua therapy "was terminated by the doctor at Central New York Aquatics," not by defendants. Pl.'s Dep. Tr., ECF No. 192, 80:6–7. Further, he tacitly concedes that his aqua therapy was reinstated after he discussed the issue with Sgt. Perrin. See Pl.'s Resp. Defs.' Statement of Material Facts ¶ 159 (asserting that the "later reinstatement" does not justify the interruption in service).

Vassenelli's home healthcare aides were replaced in 2009 because they did not hold the proper certifications—not due to the change in policy or any decision by defendants that he was no longer entitled to such care. Similarly, there is no evidence that the gaps in home healthcare coverage were the result of an attempt by defendants to reduce plaintiff's section 207-c benefits. Instead, such interruption in round-the-clock services was caused by the case managers' inability to secure proper coverage in a timely fashion and/or the aides' failure to report for shifts. Plaintiff also alleges that several of the aides fell asleep on the job. While these allegations may speak to the competence of the caregivers and be pertinent to the state law negligence claims, they are insufficient to create an issue of material fact as to whether defendants violated plaintiff's procedural due process rights. Further, many of the gaps in coverage were caused by Vassenelli himself. Indeed, he admittedly refused to allow male or African–American healthcare providers into his home. See Pl.'s Dep. Tr., ECF No. 192, 114:9–18.

During his deposition, plaintiff also claimed that the City has refused to pay for surgery to remove bone chips from his elbow.  However, he acknowledged that he refused to cooperate with an IME as requested by the City to determine whether such is related to his on-the-job injuries.  The City eventually approved payment for this procedure.  <u>See</u> Vassenelli Affirmation, ECF No. 213-5, ¶ 19.

In short, Vassenelli fails to demonstrate that the 2009 policy change has actually cut off his access to any necessary medical care related to his on-the-job injuries, as guaranteed under section 207-c.  In fact, he could not name any doctor who has refused to treat him as a result of the reduced rate of payment for services.  <u>See</u> Pl.'s Dep. Tr., ECF No. 191, 47–48. Therefore, no reasonable jury could find that his procedural due process rights have been violated.

Accordingly, defendants' motion for summary judgment will be granted with respect to the procedural due process claim (First and Second Causes of Action), and this claim will be dismissed.

### D.  <u>Substantive Due Process Claim—(Third Cause of Action)</u>

Vassenelli next alleges that defendants have deprived him of his fundamental right to receive medical care and make decisions regarding his medical treatment without interference.  Defendants argue that they are entitled to summary judgment on this claim because the right to choose one's own medical care and providers is not the type of fundamental right contemplated by substantive due process case law.  In the alternative,

defendants assert that their conduct was not conscience-shocking.[16]

In order to sustain a substantive due process claim, plaintiff must demonstrate that he was deprived of a fundamental constitutional right by government action that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (internal quotation marks omitted).  Although there is no definitive scale upon which to measure the outrageousness of governmental action, "abuses of power by government officials, intended to oppress or to cause injury and designed for no legitimate government purpose, unquestionably shock the conscience."  Id. at 94 (internal quotation marks omitted).

Even assuming, arguendo, that choosing one's own medical care and providers is a fundamental right contemplated by substantive due process case law and implicated here, there is nothing in the record to suggest the policy change was motivated by a desire to cause Vassenelli harm or was so egregious or outrageous as to constitute conscience-shocking behavior.  Plaintiff does not identify anything to counter defendants' assertion that the policy change was a valid exercise of their financial and budgetary responsibilities.  There is no evidence whatsoever that defendants acted with the intent to oppress or cause injury to plaintiff.

Accordingly, defendants' motion for summary judgment will be granted as to the substantive due process claim (Third Cause of Action), and this claim will be dismissed.

---

[16]  As noted above, plaintiff fails to demonstrate a deprivation of his access to section 207-c medical benefits.  Thus, the substantive due process claim can be dismissed on that basis alone.  However, in the interest of completeness, the parties' remaining arguments regarding this claim will be addressed.

### E.  Ninth Amendment Claim—(Fourth Cause of Action)

Vassenelli also attempts to assert a claim pursuant to the Ninth Amendment to the United States Constitution.  Defendants seek summary judgment on this claim, and plaintiff did not respond in opposition.

The Ninth Amendment is often mentioned in discussions of fundamental rights, especially those not expressly mentioned in the text of the Constitution.  However, "[t]he Ninth Amendment is not an independent source of individual rights."  Jenkins v. Comm'r, 483 F.3d 90, 92 (2d Cir. 2007); see also Mann v. Meachem, 929 F. Supp. 622, 634 (N.D.N.Y. 1996) (McAvoy, C.J.) ("The Ninth Amendment is recognized as a rule of construction and does not protect any specific right.").

Accordingly, defendants' motion for summary judgment will be granted with regard to the Ninth Amendment claim (Fourth Cause of Action), and this claim will be dismissed.

### F.  Section 1983 Conspiracy Claim—(Ninth Cause of Action)

Plaintiff alleges that defendants have conspired to deprive him of medical care, interfere with his treatment, smear his reputation, spy on him, and provide his healthcare providers with false and misleading information.  He claims that the object of this conspiracy is to deprive him of services and earn a profit for defendants.  Defendants argue that this claim is wholly conclusory and barred by the intra-corporate conspiracy doctrine.[17]

To succeed on a § 1983 conspiracy claim, plaintiff must establish:  "(1) an agreement

---

[17]  The intra-corporate conspiracy doctrine is inapplicable because plaintiff alleges that separate entities—the Syracuse defendants, POMCO and Miller, and Eriksson—conspired to deprive him of his constitutional rights.  See Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (noting that the intra-corporate conspiracy doctrine applies only where plaintiffs allege members of the same legal entity conspired together). Nonetheless, a full analysis of this doctrine is unnecessary as defendants will be granted summary judgment on other grounds.

between a state actor and a private party [or between two or more state actors]; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002); see also Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

There is sufficient evidence in the record to establish that defendants worked together in an effort to reduce the overall costs of section 207-c expenses by lowering the payments to mirror the workers' compensation rates. However, Vassenelli does not identify any evidence that would permit a reasonable jury to conclude that defendants engaged in concerted action with the intent to deprive him of his constitutional rights. Therefore, he "has not presented any evidence to support the inference of impropriety," and this claim cannot survive defendants' summary judgment motions. Scotto v. Almenas, 143 F.3d 105, 114–15 (2d Cir.1998) (reiterating that "conclusory allegations" or "unsubstantiated speculation" will not defeat summary judgment on a § 1983 conspiracy claim).

Accordingly, defendants' motion for summary judgment will be granted with respect to the § 1983 conspiracy claim (Ninth Cause of Action), and this claim will be dismissed.

### G. Equal Protection Claim—(Tenth Cause of Action)

Vassenelli next alleges that the payment policy treats retired police officers differently than retired firefighters. Defendants point out that the differences between the policies regarding police and fire personnel are the product of separate collective bargaining processes for the two groups. They further argue that the use of the workers' compensation fee schedule to pay section 207-c benefits is rationally related to the legitimate government interest of conserving public funds. Plaintiff does not respond to these arguments.

Where, as here, an equal protection claim does not implicate a "suspect class" and

involves economic interests, the governmental action is reviewed on a "rational basis" standard.  Benjamin v. Town of Fenton, 892 F. Supp. 64, 67 (N.D.N.Y. 1995) (Scullin, J.). This standard inquires whether the legislative action is "rationally related to a legitimate state purpose."  Id.  When considering an equal protection claim, defendants' stated objectives must be accepted as true "absent a factual showing by plaintiff that such objectives could not have been the real objectives."  Id. (internal quotation marks and alteration omitted).

Vassenelli offers no evidence to support his assertion that disabled police officers are treated differently than disabled firefighters.  Indeed, in his Report–Recommendation, Judge Peebles noted that "the proof at the hearing was that the benefits to disabled City police officers and firemen are administered in the same way."  Vassenelli, 2012 WL 716187, at *9 n.16.  Even assuming, arguendo, that the City does treat retired disabled police officers differently than firefighters, defendants' contention that the policy reflects an effort to save money defeats plaintiff's claim.  As previously noted, there is nothing in the record to counter defendants' stated objective of saving money.  The reduction of payments made pursuant to section 207-c rationally advances the legitimate governmental interest of conserving public funds.

Accordingly, defendants' motion for summary judgment will be granted with respect to the equal protection claim (Tenth Cause of Action), and this claim will be dismissed.

### H.  ADA and Rehabilitation Act—(Thirteenth Cause of Action)

Vassenelli alleges defendants intimidated and threatened him with a denial of continued medical services in retaliation for his complaints about the policy change. Defendants argue that he is not a qualified individual for ADA purposes and that he failed to

exhaust administrative remedies.[18]

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).  The Rehabilitation Act contains a similar provision against retaliation and is analyzed under the same standards as the ADA.  See 29 U.S.C. § 794(d).

Claims for retaliation under the ADA "are analyzed under the same burden-shifting framework established for Title VII cases." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).  First, plaintiff must establish a prima facie case of retaliation.  Id.  The burden then shifts to the employer to "articulate a legitimate, non-retaliatory reason for the challenged employment decision." Id. at 721.  Once this showing has been made, the burden shifts back to the plaintiff to "point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Id. (internal quotation marks omitted).

To establish a prima facie case of retaliation under the ADA, plaintiff must show "that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Id. at 719.

---

[18] POMCO, Miller, and Eriksson argue that plaintiff's ADA and Rehabilitation Act claim cannot be asserted against them as they do not receive federal funds, POMCO is not Vassenelli's employer, and Vassenelli did not first file a complaint with the federal Equal Opportunity Commission ("EOC") or New York's Division of Human Rights.  Plaintiff did not respond to these arguments.  Defendants are correct that this claim fails because they do not receive federal funds and plaintiff failed to file a complaint with the EOC or NYDHR.  See 42 U.S.C. §§ 12117(a), 2000e-5; Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

"Plaintiff need not be disabled within the meaning of the ADA to proceed on a theory of

retaliation for engaging in protected activity under the ADA."  Ditullio v. Village of Massena,

81 F. Supp. 2d 397, 408 (N.D.N.Y. 2000) (citing Muller v. Costello, 187 F.3d 298, 311 (2d

Cir.1999)).

      Vassenelli cannot establish a prima facie case of retaliation because he was not

engaged in an activity protected by the ADA.  He alleges that defendants retaliated against

him because he complained about the new payment policy.  However, he does not identify

any formal complaints he lodged or to whom he complained.  Nor does he explain how the

policy is unlawful under the ADA.  Therefore, his complaints about the policy do not

constitute opposition to a practice made unlawful by the ADA.  Moreover, he did not make a

charge, testify, assist, or participate in any investigation, proceeding, or hearing.

      Moreover, he fails to rebut defendants' legitimate non-retaliatory reason for the

change in policy; to wit, the need to conserve public funds spent on section 207-c benefits.

As explained above, there is nothing from which to reasonably infer that defendants changed

the policy in 2009 with the intent to discriminate against or specifically violate his rights.

      Accordingly, defendants' motion for summary judgment will be granted with respect to

the ADA and Rehabilitation Act claim (Thirteenth Cause of Action), and this claim will be

dismissed.

    **I.  First Amendment Retaliation—(Fourteenth Cause of Action)**

      Plaintiff alleges defendants have threatened to terminate or reduce his medical care

because he filed a notice of claim and this action.  Defendants argue that they did not take

any adverse action against plaintiff, and his speech has not been chilled.

      To succeed on a claim of retaliation in violation of the First Amendment, a plaintiff

must establish:  "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks omitted).

Neither the amended complaint nor plaintiff's opposition to defendants' motions identify which specific adverse actions defendants took or what threats they made in retaliation for his filing of the notice of claim and this action.  The only "threat" alleged in the amended complaint is the unfounded assertion that defendants contemplated forcibly removing Vassenelli from his home and placing him in an assisted care facility.  However, after presiding over a three-day hearing, Judge Peebles found this allegation to be exaggerated and completely without merit.  See Vassenelli, 2012 WL 716187, at *8 ("In sum, the record is devoid of even a scintilla of evidence that there is, or ever was, any imminent threat that the City will remove plaintiff from his home.").

Further, according to the Report–Recommendation, this alleged threat occurred in August 2011.  The notice of claim, however, was filed in May 2010, and this action was filed in November 2010.  This gap in time suggests the "threat" was not made in retaliation for the notice of claim or the filing of this action.  Cf. Nagle v. Marron, 663 F.3d 100, 111 (2d Cir. 2011) (a gap of six weeks is within the range of time "that can give rise to an inference of causation").  Similarly, plaintiff does not establish any causal connection between his filing of the notice of claim or this action and defendants' decision to reduce the rate of payments for certain services.  The record evidences only one reason for the reduction in payment; to wit, defendants' desire to reduce costs.

Accordingly, defendants' motion for summary judgment will be granted with respect to

the First Amendment retaliation claim (Fourteenth Cause of Action), and this claim will be dismissed.

### J.  Qualified Immunity

Finally, the individual defendants argue that they are all entitled to qualified immunity. This argument is moot because, as detailed above, there are no genuine issues as to any material fact regarding the federal constitutional claims.  See L.A. Cnty. v. Rettele, 550 U.S. 609, 616, 127 S. Ct. 1989, 1994 (2007) ("As respondents' constitutional rights were not violated, there is no necessity for further inquiries concerning qualified immunity." (internal quotation marks omitted)).

Even if any of the constitutional claims survived the motion for summary judgment, the individual defendants would be entitled to qualified immunity.  Indeed, it was objectively reasonable for them to believe that following a City policy of paying section 207-c benefits at workers' compensation rates did not violate plaintiff's constitutional rights.  See Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (a government actor is shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights").  As noted above, there is no evidence whatsoever that any of these defendants deprived plaintiff of his constitutional rights or acted with the intent to cause him harm.

### K.  Remaining Pendent State Claims

As all of the federal claims will be dismissed, the only claims that remain are the state law claims.  Pursuant to 28 U.S.C. § 1367(c)(3), supplemental jurisdiction over any remaining

state claims is declined.[19]

## IV. **CONCLUSION**

There is sufficient evidence in the record to establish that the involvement of POMCO, Miller, and Eriksson in the payment of section 207-c benefits is so entwined with the City's processing of the claims for such benefits that their conduct is fairly attributable to the state, making them state actors for purposes of § 1983.

Vassenelli enjoys a constitutionally protected property interest in access to medical care that is medically necessary and related to his disabling injuries, as guaranteed by New York General Municipal Law section 207-c. This property interest may not be terminated without appropriate pre-termination due process. However, he fails to identify sufficient evidence in the record to establish a genuine issue of material fact as to whether defendants actually terminated his access to such medical care. Nor is there any indication whatsoever of conscience-shocking conduct on defendants' behalf.

The record is similarly devoid of evidence that defendants conspired to deprive plaintiff of his constitutional rights or intended to cause him harm. Further, the reduction of payments made pursuant to section 207-c rationally advances the legitimate governmental interest in saving public funds, as asserted by defendants. Finally, even if any of the constitutional claims were to survive the motion for summary judgment, the individually-named defendants are entitled to qualified immunity.

Therefore, it is

---

[19] However, to the extent plaintiff attempts to assert state substantive due process and equal protection claims in the Fifth Cause of Action, such claims will be dismissed with prejudice for the same reasons as their federal counterparts.

ORDERED that

1.  Defendant Eriksson's motion for summary judgment (ECF No. 164) is DENIED to the extent she asserts a lack of state action;

2.  Defendants POMCO and Miller's motion for summary judgment (ECF No. 165) is DENIED to the extent they assert a lack of state action;

3.  The Syracuse defendants' motion for summary judgment (ECF No. 166) is GRANTED in its entirety;

4.  All federal claims (First, Second, Third, Fourth, Ninth, Tenth, Thirteenth, and Fourteenth Causes of Action) are DISMISSED on the merits with prejudice;

5.  The New York state constitutional claim (Fifth Cause of Action) is DISMISSED on the merits with prejudice;

6.  The remaining pendent state law claims (Sixth, Seventh, Eighth, Eleventh, and Twelfth Causes of Action) are DISMISSED without prejudice; and

7.  The Amended Complaint (ECF No. 45) is DISMISSED in its entirety.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly.

_____
United States District Judge

Dated:  August 5, 2013
        Utica, New York.